RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0199p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: JAMES D. ROBINSON, JR.,

*Debtor*.

_____

No. 13-5857

UNITED STATES OF AMERICA,

*Appellee*,

*v.*

JAMES D. ROBINSON, JR.,

*Appellant*.

Appeal from the United States District Court
for the Western District of Tennessee at Memphis
No. 2:12-cv-03064—S. Thomas Anderson, District Judge.

Decided and Filed: August 22, 2014

Before: COLE, Chief Judge; GRIFFIN, Circuit Judge; PEARSON, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:** John E. Dunlap, THE LAW OFFICE OF JOHN E. DUNLAP, P.C., Memphis, Tennessee, for Appellant. Barbara M. Zoccola, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

---

[*]The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

_____

**OPINION**

_____

COLE, Chief Judge.  After James Robinson defrauded more than one thousand victims in mail and wire fraud schemes, the district court ordered him to pay criminal restitution.  Robinson did not comply with the court's order, and he later filed a petition for Chapter 13 bankruptcy.  Filing for bankruptcy triggered the Bankruptcy Code's automatic stay, which suspends all activities related to the collection and enforcement of prepetition debts.  *See* 11 U.S.C. § 362(a).  The government seeks to bypass the automatic stay by invoking 18 U.S.C. § 3613(a), which provides that the government may enforce a judgment imposing restitution "notwithstanding any other Federal law."  Based on the plain meaning of § 3613 and the approach adopted by our sister circuits in interpreting this statute, § 3613 supersedes the automatic stay and allows the government to enforce restitution orders against property included in the bankruptcy estate.  We therefore affirm the district court's judgment.

## I.  BACKGROUND

In 1996, Robinson pleaded guilty to mail fraud and aiding and abetting under 18 U.S.C. §§ 1341 and 1342.  The district court sentenced Robinson to 97.5 months of imprisonment followed by three months of supervised release and ordered him to pay criminal restitution in the amount of $286,875.  A year later, Robinson pleaded guilty to a second set of criminal violations, resulting in convictions of wire fraud and aiding and abetting under 18 U.S.C. §§ 1342 and 1343.  The district court imposed a twenty-four-month term of imprisonment and once again ordered Robinson to pay restitution, this time in the amount of $100,000.  Although required to pay both restitution orders "in full immediately," Robinson paid only $7,779.44 of the first judgment and $200 of the second.  Before satisfying the restitution judgments, Robinson filed for bankruptcy under Chapter 13.

The government, by virtue of the criminal restitution judgments, is a lien creditor.  Thus, the Department of Justice is listed as a general unsecured creditor on Robinson's Bankruptcy Schedule F, with a $283,101 claim.  Robinson's schedule of assets listed an IRA account valued

at $47,000, a tax refund valued at $4,500, and three automobiles—a 2006 Toyota Highlander valued at $6,000, a 2001 Toyota Solara valued at $2,000, and a 1999 Infiniti valued at $900. Robinson claimed two exemptions under Tennessee law:  the entire value of his IRA account and $1,500 in the 2006 Toyota.

The government moved for a declaratory judgment to determine whether the automatic stay prevented its actions to collect restitution.  According to the government, it had the authority to enforce the restitution judgments under 11 U.S.C. § 362(b)(1) and alternatively under 18 U.S.C. § 3613(a), which provides that "notwithstanding any other Federal law . . . a judgment imposing a fine may be enforced against all property or rights to property of the person fined," with certain exceptions not relevant here.  The government also sought to terminate the stay as to all of Robinson's assets, and specifically moved to allow for the enforcement and execution on Robinson's IRA account, pension fund, and two of his three automobiles under 11 U.S.C. § 362(d)(2)(B).

The bankruptcy court denied the government's "request to terminate the automatic stay as to all assets," but granted relief from the stay as to Robinson's IRA account and two of his three automobiles.  With respect to the IRA account, the court found that "[i]t would be patently unfair . . . to allow [Robinson] to save for his retirement utilizing the IRA at the expense of his restitution creditors."  *See* 11 U.S.C. § 362(d)(1).  After determining that three vehicles were unnecessary for Robinson's reorganization, the court terminated the stay as to two of his three automobiles.

Although the government relied on 11 U.S.C. § 362(b)(1) and 18 U.S.C. § 3613 to bypass the stay, the bankruptcy court concluded that neither statute allowed the government to enforce the restitution orders against property of the bankruptcy estate.  Section 362(b)(1) excepts from the automatic stay "the commencement or continuation of a criminal action or proceeding against the debtor."  In ruling out this exception, the bankruptcy court concluded that § 362(b)(1) allows enforcement actions only against *the debtor*, not against *property of the estate.*  It noted that the stay and its exceptions apply to different entities—the debtor in personam, property of the debtor, and property of the estate—and that these categories must be examined carefully "to assure that the correct entity . . . has the intended statutory protection of the automatic stay."

Because § 362(b)(1) does not mention property of the estate, the bankruptcy court concluded that the government's collection efforts were prohibited.

The bankruptcy court then addressed 18 U.S.C. § 3613(a). While recognizing that this statute is "powerful and far-reaching," the court held that § 3613 does not overcome the automatic stay, absent the court's authorization. Reiterating its main premise that "*property of the debtor* and *property of the estate* are separate legal terms of art," the court reasoned that § 3613 does not apply to property of the estate because it too mentions only "property *of the person fined.*" Therefore, according to the bankruptcy court, property of the estate is protected during the pendency of Robinson's bankruptcy proceeding.

The government appealed the bankruptcy court's order and elected to have a district court hear the appeal. *See* 28 U.S.C. § 158(c)(1)(B). The district court did not analyze the "criminal action or proceeding" exception in § 362(b)(1); instead, it concluded that 18 U.S.C. § 3613(a) "renders the Bankruptcy Code's distinctions between . . . property of the debtor . . . and property of the bankruptcy estate a nullity." In the district court's view, it did not matter "whether the debtor in bankruptcy or the bankruptcy estate holds nominal title to such property" because § 3613(a) allows the government to enforce a restitution order against all property of the person ordered to pay. The district court emphasized the "clear Congressional policy" of § 3613(a), which was to ensure that "no Federal law . . . interfere with the United States' enforcement of a fine or restitution order." It was therefore insignificant to the district court that Robinson's property was recast as property of the bankruptcy estate because § 3613 prevented application of the stay. Any other interpretation, the court indicated, would "rob fines and restitution orders of their teeth."

Robinson timely appealed the district court's order.

## II. ANALYSIS

When reviewing an appeal that originated in a bankruptcy court, "[w]e evaluate the bankruptcy court decision directly, without being bound by the district court's determinations, and conduct an independent examination of the record." *In re John Richards Homes Bldg. Co.,*

*L.L.C.*, 439 F.3d 248, 254 (6th Cir. 2006). We review the bankruptcy court's interpretation of 11 U.S.C. § 362 and 18 U.S.C. § 3613 de novo. *See In re Vause*, 886 F.2d 794, 798 (6th Cir. 1989).

A debtor's filing for bankruptcy automatically triggers several provisions of the Bankruptcy Code. First, 11 U.S.C. § 541(a) divests a debtor of the property he or she owned at the time of the filing and vests that property in a bankruptcy trustee. *See, e.g., Bauer v. Commerce Union Bank*, 859 F.2d 438, 440–41 (6th Cir. 1988). In other words, property of the debtor becomes property of the bankruptcy estate, which consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property of the estate is central to the bankruptcy process. It "becomes the 'pot' from which all claims against the debtor will be paid pursuant to the [Bankruptcy] Code's priority scheme." *Chao v. Hosp. Staffing Serv. Inc.*, 270 F.3d 374, 382 (6th Cir. 2001) (internal citations omitted).

Second, filing for bankruptcy stays a number of enforcement actions against the debtor, his or her property, and property of the estate. *See* 11 U.S.C. § 362(a). The stay seeks to "preserve what remains of the debtor's insolvent estate and . . . provide[s] a systematic equitable liquidation procedure for all creditors, secured as well as unsecured, thereby preventing a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" *Chao*, 270 F.3d at 382–83 (quoting *Holtkamp v. Littlefield*, 669 F.2d 505, 508 (7th Cir. 1982)). The purpose of the automatic stay is to

> give[] the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R. Rep. No. 95–595, at 340 (1978). In effect, the stay offers debtors a "new opportunity" to organize their financial affairs, "unhampered by the pressure and discouragement of pre-existing debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934).

But the stay is not absolute: while it "repel[s]" many prepetition collection actions, "[s]ome governmental attacks on the estate . . . penetrate the barrier." *In re Javens*, 107 F.3d 359, 363 (6th Cir. 1997). For example, under the "criminal action or proceeding" exception, filing for bankruptcy does not stay the "commencement or continuation of a criminal action or proceeding *against the debtor*." 11 U.S.C. § 362(b)(1) (emphasis added). The government

claims that this exception allows it to collect restitution judgments from property of the bankruptcy estate. The plain language of § 362(b)(1), however, limits this exception to actions against the debtor. It does not enable the government to collect from property of the estate. Nevertheless, we conclude that the government may proceed against estate property by virtue of 18 U.S.C. § 3613.

We first consider the plain meaning of this statute because the "starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975). If the statute's language is transparent, "the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotation marks omitted).

In relevant part, § 3613(a) provides that "[n]otwithstanding *any* other Federal law . . . a judgment imposing a fine may be enforced against all property or rights to property of the person fined . . . ." (emphasis added).[1] In construing "notwithstanding" clauses, the Supreme Court and the circuit courts have indicated that this language supersedes conflicting laws. *See Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) ("As we have noted previously in construing statutes, the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section. Likewise, the Courts of Appeals generally have interpreted similar 'notwithstanding' language . . . to supersede all other laws, stating that '[a] clearer statement is difficult to imagine.'" (citation and internal quotation marks omitted)). In *Dean v. Veterans Administration Regional Office*, the Sixth Circuit examined Chapter Five of the United States Code and found that the phrase "notwithstanding any other provision of law" supplanted a conflicting provision in 42 U.S.C. § 2000e–16(c). 943 F.2d 667, 670 (6th Cir. 1991), *vacated and remanded on other grounds by* 503 U.S. 902 (1992). The D.C. Circuit interpreted expansively the phrase "notwithstanding any other provision of law" in concluding that this language surpassed § 705 of the Merchant Marine Act. *Liberty Mar. Corp. v. United States*, 928 F.2d 413, 416–18 (D.C. Cir.

---

[1] In addition to fines, restitution judgments are encompassed by 18 U.S.C. § 3613. *See* 18 U.S.C. § 3613(f) ("[A]ll provisions of this section are available to the United States for the enforcement of an order of restitution.").

1991); *see also Deutsche Bank Nat'l Trust Co. v. Tucker*, 621 F.3d 460, 464 (6th Cir. 2010) ("[T]he term 'notwithstanding' functions in its normal supplanting way: it simply excludes application of the referenced [law].").

Several circuits have held that § 3613(a) defeats other statutory provisions that safeguard an individual's property. *See, e.g., United States v. DeCay*, 620 F.3d 534, 540 (5th Cir. 2010) (holding that the government could enforce its restitution judgment under § 3613(a) against the defendant's retirement benefits that the Internal Revenue Code protected from assignment or alienation); *United States v. Novak*, 476 F.3d 1041, 1047 (9th Cir. 2007) (en banc) (holding that the government could enforce its restitution judgment under § 3613(a) against funds of the defendant in a pension plan covered by an ERISA anti-alienation provision); *United States v. Hyde*, 497 F.3d 103, 108 (1st Cir. 2007) (holding that "notwithstanding" language is obvious; therefore, "neither Massachusetts law nor the Bankruptcy Code restricts the reach of [§ 3613's] clear language"). Although only one of these cases arose in the bankruptcy context, these decisions are instructive because they demonstrate that the Bankruptcy Code, like any other federal statute, must yield if it conflicts with § 3613(a). Though the automatic stay prohibits the enforcement of prepetition judgments against property of the estate, § 3613 allows the government to collect criminal restitution despite "any other Federal law." This language overrides the application of § 362(a)'s various stays, which distinguish among the debtor in personam, property of the debtor, and property of the estate. Unlike the Bankruptcy Code, § 3613 does not use these terms of art. We therefore conclude that the government may enforce the restitution orders against property of the bankruptcy estate.

The legislative history of § 3613 also supports our interpretation. Section 3613 and the Mandatory Victims Restitution Act ("MVRA") are enforcement statutes, granting the United States the power to collect restitution for the victims of specified crimes. *See* 18 U.S.C. § 3663A. The MVRA removed judicial discretion in ordering restitution and made such orders mandatory in nearly all cases where a victim suffered an identifiable monetary loss. *Id.*; *see United States v. Perry*, 360 F.3d 519, 524 (6th Cir. 2004). Congress envisioned that the MVRA would "ensure that criminals pay full restitution to their victims for all damages caused as a result of the crime," regardless of a defendant's financial circumstances. H.R. Rep. No. 104-16,

at 4–5 (1995).  Under 18 U.S.C. § 3613, the government can enforce restitution judgments "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law."  *See* 18 U.S.C. §§ 3613(a) & 3664(m)(1)(A)(i).  Restitution is enforceable by the United States, through the Department of Justice, and by the victims named in the restitution order.  18 U.S.C. § 3664(m)(1).  The MVRA provides that

> *[n]otwithstanding any other provision of law*, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.

18 U.S.C. § 3663A(a)(1) (emphasis added).

Moreover, the MVRA incorporated the term "notwithstanding" in 1996, whereas the automatic stay provision and 11 U.S.C. § 541 were enacted in 1978.  *See* Mandatory Victims Restitution Act, Pub. L. No. 104-132, Title II, § 207(c)(3), 110 Stat. 1238 (1996); Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2594.  As the Supreme Court has observed: "[t]he classic judicial task of reconciling many laws enacted over time, and getting them to make sense in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute."  *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) (internal citations and quotation marks omitted).  In addition, a "specific policy" expressed in a subsequent statute should govern the interpretation "of the [earlier] statute even though it ha[s] not been expressly amended."  *United States v. Estate of Romani*, 523 U.S. 517, 530–31 (1998).  The "specific policy" underlying the MVRA ensures that victims "receive the restitution that they are due" and that bankruptcy laws do not frustrate the prosecution of criminal offenders.  S. Rep. No. 104-179, at 12 (1995); H.R. Rep. No. 595, 95th Cong., 1st Sess. at 342 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. at 51 (1978).  With the MVRA, "Congress has specifically subordinated the goals of economic rehabilitation and equitable distribution of assets to the states' interest in prosecuting criminals."  *In re Gruntz*, 202 F.3d 1074, 1086 (9th Cir. 2000); *see also United States v. Novak*, 441 F.3d 819, 823 (9th Cir. 2006) (The MVRA and § 3613 demonstrate that "Congress has made the policy choice to elevate the collection of criminal restitution orders in the debt-collection food chain.").

Although we are mindful that "[s]tatutory interpretation requires more than concentration [of] isolated words," the structure of § 3613 suggests that the government's collection efforts are permitted.  *See Boys Mkts., Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 250 (1970).  After Congress drafted § 3613(a) indicating that no other federal law would prevent enforcement of a restitution judgment, it later provided, in § 3613(e), that criminal debts and liens survive bankruptcy discharge.  An explicit reference to bankruptcy discharge in § 3613(e) suggests that Congress had the potential effects of the Bankruptcy Code in mind when it drafted § 3613(a).  *See South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 351 (1998) ("[W]e assume that Congress is aware of existing law when it passes legislation.").

We find additional support for our conclusion based on the exceptions listed in § 3613(a).  The exceptions provide as follows:

> [A] judgment imposing a fine may be enforced against all property or rights to property of the person fined, except that –
>
> > (1) [P]roperty exempt from levy for taxes pursuant to section 6334(a)(1), (2), (3), (4), (5), (6), (7), (8), (10), and (12) of the Internal Revenue Code of 1986 shall be exempt from enforcement of the judgment under Federal law;
> >
> > (2) [S]ection 3014 of chapter 176 of title 28 shall not apply to enforcement under Federal law; and
> >
> > (3) [T]he provisions of section 303 of the Consumer Credit Protection Act (15 U.S.C. 1673) shall apply to enforcement of the judgment under Federal law or State law.

Conspicuously, the Bankruptcy Code, including the automatic stay, is absent from the list of exceptions, and its absence informs our discussion because "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980).  Additionally, this court has explained that "if a statute specifies exceptions to its general application, other exceptions not explicitly mentioned are excluded." *United States v. Lewis*, 900 F.2d 877, 881 (6th Cir. 1990) (citation and internal quotation marks omitted).  Consistent with these cases, we will not impute a Bankruptcy Code exception in § 3613 where none has been enumerated.  As the district court correctly determined,

"[h]ad Congress wished to exempt a defendant's property transferred to the legal fiction of a bankruptcy estate from 3613(a)'s ambit, it knew how to do so." Since Congress specifically exempted certain property from the enforcement of a criminal fine, but failed to mention estate property, Robinson may not take refuge in the stay.

The distinctions made throughout the Bankruptcy Code impacting the debtor in personam, property of the debtor, and property of the estate in different ways should not be overlooked. Without minimizing these distinctions, Congress, by incorporating such broad language in § 3613, has authorized the government to proceed against property of the bankruptcy estate.

While we agree with the district court's ultimate conclusion that the government may proceed against property of the estate, we disagree with its statement that for purposes of the government's efforts to collect restitution "there is no 'property of the bankruptcy estate' . . . only property of the person ordered to pay restitution." In the bankruptcy context, property is either property of the estate or it is not; it cannot be property of the estate for one purpose and not for another. To hold otherwise would create confusion on the part of trustees, debtors, and courts as they await governmental collection action. As discussed previously, Robinson's bankruptcy filing immediately transferred his property to the bankruptcy estate. Even so, the government may satisfy the restitution judgments from estate property.

### III.  CONCLUSION

For the reasons stated above, we affirm the judgment of the district court.